UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 5:19-168-KKC-MAS-1 |
| Plaintiff, | |
| V. | **OPINION & ORDER** |
| JARRELL D. WILKERSON, | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant's motion to suppress evidence. For the reasons stated below, the Court denies Defendant's motion.

## Background

In the early morning of July 27, 2019, Officer Schiff of the Lexington Police Department was conducting surveillance in an area known to police as having a high incidence of narcotics activity. (DE 23 at 1.) Officer Schiff observed Defendant Jarrell D. Wilkerson walking back and forth in the street while carrying an assault rifle, at times stopping to speak with other individuals. (DE 23 at 1-2.) Defendant eventually placed the rifle into a pickup truck and drove away with a female passenger. (DE 23 at 2.) After observing the truck proceed through a stop sign without stopping and traveling at a high rate of speed, Office Schiff relayed the vehicle description, presence of the rifle, and the direction of the vehicle's travel to Officers Phillips and Ridener. (DE 23 at 2; DE 25-1 at 8-9.) As they were following Defendant, Officers Phillips and Ridener observed the truck turn without signaling, and they initiated a traffic stop. (DE 23 at 2-3.)

1

Officer Ridener claims that as he approached the vehicle, he could smell marijuana. (DE 23 at 3.) The officers asked Defendant to exit the vehicle, but he refused; eventually the officers forcibly removed him. (DE 23 at 3.) Officer Ridener claims that, as the officers went to remove Defendant from his vehicle, he saw a bag of marijuana sticking out of Defendant's pocket, which eventually fell out of the pocket and into plain view. (DE 23 at 3; DE 25-1 at 9, 11, 13.) Defendant was handcuffed and a search of his person produced a bag of cocaine. (DE 23 at 3.) A subsequent search of the truck produced the rifle, which was covered by some clothing in the back seat, as well as a loaded magazine for the rifle and a small additional amount of cocaine. (DE 23 at 3-4.)

On October 17, 2019, the grand jury returned an indictment charging Defendant with one count of possession of a firearm by a convicted felon. (DE 1.) On December 13, 2019, Defendant filed a motion to suppress all the evidence that was seized by the officers. (DE 21.) The Court held a hearing on the motion on January 23, 2020.

## Analysis

**I. Standard**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Evidence obtained in violation of the Fourth Amendment generally may not be used at trial. *Herring v. United States*, 555 U.S. 135, 139-141 (2009). Under Supreme Court precedent, this "exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and… evidence later discovered and found to be derivative of an illegality, the so called 'fruit of the poisonous tree.'" *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (citation and some internal quotation marks omitted). In seeking suppression of evidence, a defendant has the burden to prove a violation of his or her rights. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

## II. Discussion

### A. *The traffic stop*

As Defendant appears to concede (DE 24 at 3), the initial traffic stop was not a violation of Defendant's Fourth Amendment rights. Under Kentucky state law, motorists are required to give the appropriate signal before turning, KRS § 189.380, and "[a]n officer may stop and detain a motorist so long as the officer has probable cause to believe that the motorist has violated a traffic law," *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009).

### B. *Removing Defendant from the vehicle*

The officers removing Defendant from the truck was not a violation of Defendant's Fourth Amendment rights. During an "ordinary traffic stop… any subsequent detention after the initial stop must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). Under this principle, "[t]o detain the motorist any longer than is reasonably necessary to issue the traffic citation… the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002). When the officers opened the front driver side door and made physical contact with Defendant, they did so lawfully because they had reasonable suspicion of criminal conduct, beyond the mere traffic violation. "*Terry* [*v. Ohio*, 392 U.S. 1 (1968)]… permits a police officer briefly to detain a person or property for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005). The evidence establishes that, by the time the officers went to physically remove Defendant from the vehicle, they had observed him in an area believed to have a high incidence of narcotics activity and walking in the street with an assault rifle, which was later placed in his truck. He was observed committing a traffic violation and

exhibiting conduct that Officer Ridener testified as being, based on his prior experience, consistent with evading police. The inside of Defendant's truck smelled of marijuana.[1] As the officer body camera footage seems to confirm, during the traffic stop, Defendant appears to lean and reach back into the passenger area of the truck, where Officer Schiff had observed him place the rifle – conduct consistent with someone trying to conceal contraband. *See United States v. Graham*, 483 F.3d 431, 439 (6th Cir. 2007). Further, because officers can lawfully order a driver out of a vehicle if the vehicle has been lawfully detained for a traffic violation, *Arizona v. Johnson*, 555 U.S. 323, 331 (2009), by refusing to come out of the truck, Defendant was refusing a lawful police order. Based on these circumstances, the Court finds that the officers had at least reasonable suspicion of criminal activity.

Defendant claims that, as he was being removed from the truck, he felt the officers reach into his pocket. (DE 21-1 at 2.) In effect, Defendant argues that there was an initial search of his person executed contemporaneously with the officers removing him from the truck, and that the marijuana was unlawfully seized from his pocket pursuant to this unlawful search. As an initial matter, the Court accepts Officer Ridener's testimony that the marijuana fell out of Defendant's pocket. However, even if the Court accepts Defendant's testimony, it does not establish a Fourth Amendment violation. Officer Ridener testified that he saw the marijuana in Defendant's pocket after the front driver side door was opened and the other officers made physical contact with Defendant. Defendant's testimony is not inconsistent with Officer Ridener's on this point and does not discredit it. Once Officer Ridener saw in plain view the top of a bag of marijuana sticking out of Defendant's pocket, the officers had the requisite probable cause to escalate the seizure into a warrantless arrest,

---

[1] As discussed more below, Defendant contests that the inside of the vehicle smelled of marijuana. Although the Court accepts Officer Ridener's testimony about the smell, even without this evidence the Court would still find that the officers had the requisite reasonable suspicion of criminal activity to detain Defendant for longer than what would be necessary to issue a traffic citation.

4

*Graves v. Mahoning Cty.*, 821 F.3d 772, 776 (6th Cir. 2016), and search Defendant's person incident to and contemporaneously with that arrest, *Arizona v. Gant*, 556 U.S. 332, 339 (2009); *see also United States v. Robinson*, 414 U.S. 218, 236 (1973) ("it is the fact of the custodial arrest which gives rise to the authority to search").[2] Therefore, even accepting Defendant's version of the facts – that the marijuana was seized from his pocket pursuant to a search, and not, as the government claims, recovered after it had fallen out of his pocket – does not establish a Fourth Amendment violation.

## C. Search of Defendant's person

The subsequent search of Defendant's person was not a violation of Defendant's Fourth Amendment rights. As discussed above, once officers arrested Defendant, they could lawfully search his person incident to that arrest.

## D. Search of the vehicle

The search of the vehicle was not a violation of Defendant's Fourth Amendment rights. "[O]fficers may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018). Because "detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle," *United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008) (collecting cases),

---

[2] Although the circumstances of the officers removing Defendant from the vehicle may not exhibit all the hallmarks of a traditional custodial arrest, the Court finds that the justifications for warrantless searches incident to lawful arrests are nonetheless applicable to the seizure at issue here. Among the historical rationales for the search incident to an arrest exception is officer safety and the need to disarm a suspect being taken into custody. *Knowles v. Iowa*, 525 U.S. 113, 116-17 (1998). "The danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty." *Robinson*, 414 U.S. at 234 n. 5. The circumstances here were unlike those of mere "routine traffic stop[s]" which are ordinarily only "relatively brief encounter[s]." *Knowles*, 525 U.S. at 117. A search of Defendant's person for any weapons, incident to the arrest and to ensure that he was not armed as the officers took physical hold of him, would have been reasonable. The second historical rationale – preservation of evidence – also applies. *Id.* at 116. Officer Ridener not only saw contraband on Defendant's person, but also knew that Defendant had been seen coming from an area known to have a high incidence of narcotics activity, and he could smell marijuana inside the truck. Further, Defendant and the female passenger were refusing to comply with lawful police orders. In the circumstances, a search of Defendant's person incident to the arrest and to secure the apparent evidence of a crime, as well as to search for any other evidence, would have been reasonable.

once Officer Ridener approached the truck and smelled marijuana, the officers could lawfully search the truck. Although Defendant contests that the truck smelled of marijuana (DE 24 at 2), the Court finds Officer Ridener's testimony to be credible.[3]

However, even if the Court rejects Officer Ridener's testimony that he smelled marijuana, the officers eventually discovering the drugs was also sufficient to provide probable cause for the search. Further, because "[p]olice may search a vehicle incident to a recent occupant's arrest [if] it is reasonable to believe the vehicle contains evidence of the offense of arrest," *Gant*, 556 U.S. at 351, Defendant having been arrested for a drug offense was sufficient to justify searching the truck, because it was reasonable to believe that there would be further evidence of that offense in his truck.

## **Conclusion**

Accordingly, the Court hereby ORDERS that Defendant's motion to suppress (DE 21) is DENIED.

Dated January 29, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

---

[3] Not only did the officers find marijuana, but the police report documenting the incident notes the smell specifically (DE 25-1 at 13).

6